**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-88** |
| **BRIAN PITTMAN** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Brian Pittman stole over half a million dollars meant to reach small business owners hit hard by the COVID-19 pandemic. He recruited friends and family and completed fraudulent loan applications in their names. He then took over half the money for himself, leaving the others to pay the bill. He stole the money tax free, failing to report the over a quarter-million dollars of income he made from his fraudulent scheme on his tax returns. For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>BACKGROUND</u>

On March 12, 2026, the defendant waived indictment and pled guilty to a two-count information charging him with one count of wire fraud, in violation of 18 U.S.C. § 1343, and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1). During his plea colloquy, the defendant admitted that in the wake of the COVID-19 pandemic he executed a scheme to obtain over half a million dollars in relief benefits in his name and the names of friends and family. Using the personal information of friends and family, the defendant completed several Emergency Injury Disaster Loan ("EIDL") Program applications, resulting in payouts of $363,600. The defendant kept the majority of these funds, $252,400, for himself. He obtained an additional $181,164 in assistance from the Small Business Administration ("SBA") based on

fraudulent applications filed in his own name and in the names of businesses he controlled. The defendant filed a tax return for tax year 2020, in which he did not report the $252,400 he obtained from his fraudulent scheme, which resulted in a material understatement of his income and a tax loss of approximately $89,391.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of 23 years, a term of supervised release of three years, a fine of $500,000, and a special assessment of $200.

### B. Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range, applying the 2025 Guidelines Manual in effect at the time of sentencing, as follows:

For the wire fraud charge (Count 1), an adjusted offense level of **19**, calculated by: (a) applying a base offense level of 7, because the statutory maximum term of imprisonment is 20 years, pursuant to USSG §2B1.1(a)(1); and (b) adding 12 levels because the loss amount was $544,764, pursuant to USSG §2B1.1(b)(1)(G). Presentence Investigation Report, September 21, 2026 ("PSR") ¶¶ 31-36.

For the tax fraud charge (Count 2), an adjusted offense level of **16**, calculated by: (a) applying a base offense level of 14, based on a tax loss of $89,391, pursuant to USSG §§2T1.1(a)(1), 2T4.1(E); and (b) adding 2 levels because the defendant failed to report the

source of his income derived from criminal activity in an amount over $10,000 in one year, pursuant to USSG §2T1.1(b)(1). PSR ¶¶ 37-42.

Each count is a unique group and each is assigned 1 unit pursuant to USSG §3D1.4(a), (b), (c). PSR ¶ 43. Thus, the greater offense level of 19 is increased by 2, for a total combined adjusted offense level of **21**. PSR ¶¶ 44-46.

The total combined offense level of **21** is reduced by **2** points because the defendant meets the criteria of a Zero-Point Offender, pursuant to USSG §4C1.1(a), and an additional **3** total points because he accepted responsibility and timely notified the authorities of his intention to plead guilty, pursuant to USSG §3E1.1(a), (b). PSR ¶¶ 47-49.

The resulting total offense level is **16**. PSR ¶ 50.

The defendant's criminal history score is zero, resulting in a criminal history category of I. PSR ¶ 53.

The resulting guideline range based on a total offense level of 16 and criminal history category I is **21 to 27 months**' incarceration. PSR ¶ 101.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-

Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Consideration of the 3553(a) Factors Regarding Imprisonment.**

The defendant was motivated by greed. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act provided financial relief to struggling Americans via, among other things, the EIDL Program. The EIDL Program was designed to provide low-interest loans to qualifying small businesses to help them meet financial obligations and operating expenses they could no longer afford due to the pandemic. The unfortunate byproduct of the government's righteous mission to provide timely financial relief to small businesses was that these programs relied significantly on the honesty and integrity of the applicants, who were expected to provide truthful information about their business operations. The defendant knowingly exploited this

trust and defrauded the government for his own selfish gain, making up figures on applications and using the personally identifying information of others to line his own pockets.

The defendant's personal history and characteristics do not mitigate the need for a sentence of incarceration. The defendant was raised by his mother, with whom he still maintains a close relationship. PSR ¶¶ 63, 68. He claims to have suffered from physical and sexual abuse as a child. PSR ¶¶ 62, 64. Yet, despite any hurdles faced in childhood, the defendant grew to be a trusted member of his community, serving as a pastor for at least the past decade, PSR ¶¶ 88, 90, running summer camps and a men's group, and providing "spiritual guidance and general life support." PSR ¶ 93. The defendant now worries about the reactions of his family members and church members when they learn about his criminal conduct. PSR ¶ 70. He betrayed their trust, recruiting those in his community to participate in his scheme to defraud, and revealed the ease with which he engaged in dishonesty and deceit.

This crime is serious. The defendant defrauded the government, manipulating and exploiting a program designed to provide financial relief to small business owners and employees during a time of uncertainty and panic. The defendant stole money that was earmarked for people who actually needed financial assistance.

The defendant's scheme also put his friends and family in financial jeopardy. Notably, the EIDL program provided *low interest loans*, not grants. When the defendant applied for loans using the information of others, they became responsible for repaying the loans when they came due. The defendant left his friends and family with only a portion of the loan proceeds, and in one instance none of the proceeds at all, *see* PSR ¶ 18, and then walked away with his cut and no responsibility. Meanwhile, his friends and family were stuck with five-figure loan balances. The recommended term of imprisonment is required "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2).

Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense. 18 U.S.C. § 3553(a)(2). Many individuals abused the pandemic assistance programs during the COVID-19 pandemic, deciding that they could use the programs to get "free money" through fraud. Many of these bad actors have been identified and have faced prosecution or other legal consequences. But, given the pervasiveness of the fraud, many more have assuredly gotten away with their crimes. Thus, in instances, like this one, where the fraudster has been identified, a meaningful sentence of incarceration is warranted to provide general deterrence for the future so that citizens and their elected representatives are comfortable funding future emergency relief programs. This factor also weighs heavily in favor of the recommended sentence.

In addition, a sentence without significant prison time sends the message that when stealing from the government, the only punishment will be the need to pay back the stolen money. That is not justice. A guideline sentence makes it clear that serious crime of any sort, white-collar or not, is dealt with firmly. *See United States v. Mathai*, 20-CR-437, 2023 WL 3570954, at *2 (in tax cases "appropriate punishment furthers general deterrence and respect for tax laws") (E.D. Pa. May 18, 2023). The concern that "sentencing for white-collar crime had been ineffectual" was one of the key reasons the Sentencing Commission structured the fraud guidelines to encompass terms of imprisonment. *United States v. Levinson*, 543 F.3d 190, 201 (3d Cir. 2008). Lengthy sentences are necessary in white collar cases because "a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an important component of a putative offender's calculus on whether to commit the crimes." *United*

*States v. Neff*, 523 F. Supp. 3d 726, 729 (E.D. Pa. 2021). Anything less would send the message that theft goes essentially unpunished. It is unlikely the defendant will be able to pay back the government in the near future. *See* PSR ¶ 95 (showing significant negative monthly cash flow). Even if he could pay back every cent today, a sentence of little to no prison time indicates to other potential white collar criminals that they should take the risk of stealing – at worst, they will just have to pay back the stolen money.

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

**B. Supervised Release.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3)

("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least two years is warranted. The defendant has agreed to pay restitution of over $600,000, but it remains unclear how he will secure those funds. The defendant suspects he may lose his job following any period of incarceration, PSR ¶ 94, and, even with his current job, it remains unclear how he is able to meet his monthly expenses. *See* PSR ¶ 95 n.12. The defendant will likely need assistance upon re-entry, including reinstating his driver's license and obtaining health insurance. PSR ¶ 72. The defendant worries that once his congregation learns about his criminal conduct, it will affect the donations made to his church, PSR ¶ 70, which, presumably, are the source of his $2,700 monthly housing stipend used to pay for his three-bedroom home in Clayton, Delaware. PSR ¶¶ 88, 69, 95. Thus, he may also need assistance finding a suitable place to live. A two-year period of supervised release is appropriate because it advances the goals of sentencing to deter criminal conduct, 18 U.S.C. § 3553(a)(2)(B), provide the defendant with needed services, 18 U.S.C. § 3553(a)(2)(D), and pay restitution to victims. 18 U.S.C. § 3553(a)(7).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*_/s Ruth Mandelbaum_*
JESSICA RICE
RUTH MANDELBAUM
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Timothy A. Wright, Esquire
Timothy_Wright@fd.org

*/s Ruth Mandelbaum*
RUTH MANDELBAUM
Assistant United States Attorney

DATED: September 22, 2026